IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. RICKY EUGENE COFER

**Direct Appeal from the Criminal Court for Anderson County**
**No. 97CR0360     James B. Scott, Jr., Judge**

No. E2000-01499-CCA-R3-CD
June 25, 2001

The defendant, Ricky Eugene Cofer, was convicted of aggravated robbery. The trial court imposed a Range II sentence of 15 years. In this appeal of right, the defendant contends that his indictment for aggravated robbery was legally insufficient; that the evidence was insufficient to convict; and that his trial counsel was ineffective. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

William R. Pratt, Clinton, Tennessee, for the appellant, Ricky Eugene Cofer.

Paul G. Summers, Attorney General & Reporter; Peter M. Coughlan, Assistant Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At approximately 4:00 A.M. on October 3, 1997, the victim, Uneada Miller, a clerk at the Rocky Top Market in Oak Ridge, stepped outside to smoke a cigarette. A man who was armed with a knife confronted her and directed her back inside the market. Once inside, he demanded the money from the store's cash register. The robber, who attempted to cover his face with one hand, moved the knife in the direction of the victim as he waited for the cash. The victim estimated that the blade was five or six inches long.

The victim described the robber to police as a white male in his mid to late twenties, five feet, nine inches tall, and weighing 160 pounds. Two weeks later, the victim identified the defendant from a photographic array. At trial, the victim again identified the defendant as the perpetrator. She testified that she and her sister, Janice Whitson, saw the defendant six months later at the Food City in Oliver Springs. The victim remembered the date as April 7, 1998, which was her deceased son's birthday. She stated that the defendant approached her from behind as she entered the store and then

threatened her. The victim recalled that the defendant warned her not to testify in court if she knew "what was good for [her]," and he also stated that he knew where she lived.

Polly Barnes, the manager of the Rocky Top Market, testified that the robbery had been videotaped on a security camera. She calculated that the defendant had taken over $323.00 in the robbery. Pete Nance of the Oak Ridge Police Department testified that when he arrived at the scene, the victim was "visibly shaken and nervous and upset."

Ron Andrus, also of the Oak Ridge Police Department conducted the photographic lineup. At trial, he testified that the victim identified the photo of the defendant as the robber without hesitation.

The defense theory was that the victim had falsely accused the defendant because he had "ripped her off" in a prior marijuana transaction. The defendant's sister, Misty Cofer, testified that her brother was actually six feet or six feet one. Ms. Cofer, who some three years earlier had dated the victim's brother, Jim Whitson, also claimed that the victim knew the defendant prior to the robbery. She stated that she and her brother saw the victim at Food City twice between the time of his arrest and his trial. She recalled that on the first occasion, no words were exchanged. On the second, according to Ms. Cofer, the victim informed them that "if she had a thousand dollars, she'd forget it and disappear." Ms. Cofer, who also stated she went to the Food City "about every day," claimed the last incident was on March 30, not April 7 as claimed by the victim.

Mary Costello, who has two sons by the defendant, testified that she had a chance meeting with Ms. Cofer and the defendant at the Food City in March and that she saw the victim and her sister, Ms. Whitson, curse the defendant. Ms. Costello claimed the victim and her sister "flipped birds" at them as they were driving away. She also contended that the defendant used to work with the victim's brother.

The defendant did not testify.

On rebuttal by the state, the victim testified that she was unaware that Ms. Cofer had dated her brother, Jim Whitson. She stated that after the robbery, Ms. Cofer, whom she met through a sister, had talked with her twice. She recalled that on the first occasion, Ms. Cofer asked whether she could identify a photograph of the defendant who, she said, "they [were] trying to blame" for the robbery. The victim recalled that she looked at the photo and confirmed that the defendant had robbed the market. The second occasion, some two weeks later, the victim saw Ms. Cofer at the Food City parking lot. She said Ms. Cofer offered her money not to testify against the defendant. She recalled Ms. Cofer saying that the defendant had a crack habit but would not have harmed her. The victim testified that she reported the incident to Officer Andrus.

The jury saw the videotape of the robbery. The tape indicated that the victim held up her hands and backed away from the defendant as he entered the store. When the defendant left, the victim covered her face with her hands.

Initially, the defendant complains that the indictment was insufficient. In pertinent part, the indictment alleges that the defendant did "intentionally, knowingly, recklessly and violently, take from the person of Uneada Miller approximately $200.00 in good lawful money of the United States, being the property of Rocky Top Market, through the use of a deadly weapon, to wit: a knife, in violation of TENN. CODE ANN. § 39-13-402." The defendant asserts the indictment failed to allege that the victim had been placed in fear, an element of the offense of both robbery and aggravated robbery. See Tenn. Code Ann. §§ 39-13-401, -402.

Provisions of our state and federal constitutions guarantee the criminally accused knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "Fair and reasonable notice of the charges against an accused is a fundamental constitutional requirement." State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996). To be sufficient, an indictment must "inform [the] defendant of the precise charges[;] . . . must enable the trial court upon conviction to enter an appropriate judgment and sentence; and . . . must protect [the] defendant against double jeopardy." Id. As a matter of fairness, the constitutional requirement is designed to afford the criminally accused an adequate opportunity to prepare any defense before the trial. See, e.g., Pope v. State, 149 Tenn. 176, 258 S.W. 775 (1924); Hankins v. State, 50 Tenn. 257 (1871).

In Ruff v. State, 978 S.W.2d 95 (Tenn. 1998), our supreme court approved an indictment which included the statutory reference to aggravated kidnapping but failed to include the mens rea, one of the elements of the offense. Similarly, in State v. Carter, 988 S.W.2d 145 (Tenn. 1999), our supreme court upheld felony murder indictments which included the proper statutory references but failed to provide the mens rea. A similar result was reached in State v. Wilson, 31 S.W.3d 189 (Tenn. 2000), where the defendant was indicted for delivery of cocaine.

In order to satisfy the traditional, constitutional requirements that the defendant be made aware of the nature of the accusation, an indictment or presentment must provide notice of the offense charged, include adequate grounds upon which a judgment may be entered, and serve to protect the defendant against double jeopardy. State v. Byrd, 820 S.W.2d 739 (Tenn. 1991). Our supreme court has concluded that those goals may be achieved even when an element of the offense is omitted so long as there is a statutory reference to the crime. That is precisely the situation here. Thus, the failure to allege that the victim had been placed in fear is not fatal in this case because the indictment referred to the statute defining aggravated robbery.

II

Next, the defendant contends that the state failed to prove that the victim had been placed in fear, an essential element of the crime. The state argues otherwise.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). The relevant question is whether, after

reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This court may neither reweigh nor reevaluate the evidence; nor may this court substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). The evidence is sufficient when a rational trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). When there is a challenge to the sufficiency of the evidence, the defendant has the burden of demonstrating that the evidence is not sufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Aggravated robbery is defined as a robbery with either of the following additional elements:

(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or

(2) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-402.

Here, there was evidence that the defendant waved a knife with a five- to six-inch blade towards the victim. The proof offered by the state demonstrated that the victim carefully followed the defendant's directive to return to the inside of the market and hand over the money in the cash register. The videotape establishes that the victim raised her hands in response to the defendant's commands. The investigating officers described the victim as emotionally shaken immediately after the robbery. From this, it is our view that the jury acted within its prerogative by concluding that the defendant had placed the victim in fear and was, therefore, guilty of aggravated robbery.

III

Finally, the defendant alleges that his trial counsel, Nancy Meyer, was ineffective for having failed to move for a mistrial, withdraw from representation, and testify as a defense witness as a means of impeaching the testimony of the victim. The defendant contends that there were material issues of fact as to whether the meeting in the Food City parking lot involving the victim and the defendant, who was on pretrial bail, occurred on March 30 or April 7, 1998, and as to what in fact had taken place during the incident. The defendant makes the following explanation: "By having knowledge of a discrepancy in the version of events, and when they happen, Defendant's attorney Ms. Meyers, became an important witness on behalf of the Defendant. Ms. Meyers should have recognized the fact that she was a witness for the Defendant at that point in time. . . ."

At the hearing on the motion for new trial, Ms. Meyer testified that the defendant had reported the Food City incident to her the day after it occurred. She recalled that the victim had claimed that the incident had occurred seven days later than the date attested to by Ms. Cofer and Ms. Costello. Attorney Meyer stated that the assistant district attorney general had effectively argued to the jury that the defendant must have been guilty of aggravated robbery, or else he would not have attempted to coerce the witness on the date at issue. Ms. Meyer conceded that she was not present when the victim and the defendant saw each other in the Food City parking lot. At the hearing, however, she contended that had she withdrawn as counsel and testified, it would have demonstrated that the victim had been mistaken about the date of her confrontation with the defendant, thereby discrediting her testimony.

While the trial court overruled the motion for new trial, it made no specific finding regarding the claim of ineffective assistance of counsel. That is a statutory requirement when the allegation of ineffective assistance of counsel is an alleged ground for relief in a petition for post-conviction relief. See Tenn. Code Ann. § 40-30-211. Prior to overruling the motion, the trial court expressed concern about the admissibility of the rebuttal testimony offered by the victim, but made no suggestion that trial counsel had acted ineffectively by failing to testify.

The Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee criminal defendants the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). A defendant seeking relief on grounds of ineffective counsel must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

The claim of ineffective assistance of counsel is a mixed question of law and fact and subject to de novo review; however, a trial court's findings of fact, while reviewed de novo, include a presumption of correctness unless the preponderance of the evidence is otherwise. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a de novo standard. Id. Appellate courts may neither reweigh nor re-evaluate the evidence or substitute their own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).

Here, there was no deficiency on the part of trial counsel for failing to withdraw and offer herself as a witness. The definition of hearsay is a statement other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). It is not admissible except as provided by the Tennessee Rules of Evidence or otherwise by law. Tenn. R. Evid. 802.

Any testimony offered by Attorney Meyer in this case would have been restricted by our hearsay rules. If Ms. Meyer could have established the proper foundation for her testimony, it is our view that she could have testified only to the date on which she received the defendant's phone call about the Food City incident. State v. Fox, 733 S.W.2d 116, 118 (Tenn. Crim. App. 1987) (alibi

witness allowed to testify regarding time at which she received a telephone call from the defendant). She would not have been able to testify as to the content of the communications. Even if admissible, the testimony would have been cumulative of that of the defendant's girlfriend, Mary Costello, and his sister, Misty Cofer. The defendant has failed to explain why the exact date of the encounter was material, other than to impeach the victim's testimony. The testimony of Ms. Costello and Ms. Cofer served that purpose. Trial counsel was not ineffective for failing to withdraw and offer to testify as a witness.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE